IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 04-307 |
| | ) |
| ROBERT BOOKER | ) |

O P I N I O N

DIAMOND, D.J.

Defendant was charged in a two-count indictment with possession with intent to distribute 5 grams or more of crack cocaine, in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(B)(iii), and carrying a firearm during and in relation to a drug trafficking crime on or about June 20, 2004, in violation of 18 U.S.C. §924(c)(1)(A)(i). Presently before the court is defendant's omnibus motion to suppress evidence and statements (Document No. 22). A hearing was held on this matter and evidence was taken on June 15, 2005. For the reasons set forth herein, defendant's omnibus motion will be denied.

Pittsburgh Police Officer Robert Kavals testified at the suppression hearing. On June 20, 2004, Officer Kavals was patrolling in the Homewood section of the city. As he traveled south on North Homewood Avenue toward the intersection with Race Street, the officer observed defendant's vehicle approach the same intersection traveling north on North Homewood Avenue. According to Officer Kavals, defendant accelerated through the intersection

AO 72
(Rev. 8/82)

and made a left turn onto Race Street without stopping at a stop sign or using his turn signal. Although the officer attempted to pull defendant's vehicle over, defendant continued to travel down Race Street until he suddenly pulled over. Defendant slammed the car into park while it still was moving forward and exited the vehicle.

Defendant began to walk away from the vehicle. Officer Kavals advised defendant that he was not free to leave the area, but defendant ignored him and fled on foot. Officer Kavals chased defendant, and, as he did so, the officer noticed that defendant was holding the right front side of his pants. During the chase, defendant fell to the ground. When defendant stood up, he turned and faced Officer Kavals and drew a firearm from his right front pants pocket. Defendant held the gun down to his right side. Officer Kavals then drew his weapon, and, at that point, defendant tossed his gun into a grassy area. Defendant then was arrested. Subsequent to defendant's arrest, the firearm was recovered. A search of defendant's person revealed $206 and two knotted baggies that contained approximately 16 grams of crack cocaine.

Pittsburgh Police Detective Joseph Bielevicz also testified at the hearing. Detective Bielevicz transported defendant from the county jail to the ATF office for processing prior to his initial appearance in federal court. After processing, Detective Bielevicz and ATF Special Agent Manns met with defendant in an

AO 72
(Rev. 8/82)

interview room.  After all three were seated and defendant's handcuffs were removed, Special Agent Manns advised defendant of his right to remain silent and right to counsel.  Defendant acknowledged that he understood his rights and agreed to talk with the agents.  Defendant signed a Waiver of Right to Remain Silent and Right to Advice of Counsel form (the "Waiver Form"), a copy of which was admitted into evidence at the hearing.  Special Agent Manns and Detective Bielevicz interviewed defendant regarding the evening of June 20, 2004.  According to Detective Bielevicz, defendant stated that he was intoxicated, that he did not stop when the police attempted to conduct a traffic stop, that he fled and that he had a gun and crack cocaine. Defendant also told Manns and Bielevicz where he bought the gun and that he had been buying and selling crack for the past year and a half.

The only other witness who testified at the suppression hearing was Marc Caudel, an investigator with the Federal Public Defender's Office.  Mr. Caudel investigated the intersection of North Homewood Avenue and Race Street.  He was present when photographs were taken of the intersection.  Mr. Caudel testified that the photographs, which were admitted into evidence at the hearing, show there is a two-way stop sign on Race Street, but there are no stop signs controlling traffic on North Homewood Avenue.  Mr. Caudel also testified that he spoke with a representative of the Pittsburgh Public Works Department, who

3

confirmed that there had never been a stop sign on North Homewood Avenue. This also was confirmed by a 1962 diagram from the Pittsburgh Public Works Department, which was admitted into evidence. The diagram depicted the intersection and showed that there is no stop sign on North Homewood Avenue.

In light of Mr. Caudel's testimony, Officer Kavals was recalled to testify. He testified that he thought there was a stop sign on North Homewood Avenue, and he was preparing to stop his vehicle as he approached the intersection. Officer Kavals also testified that his duties include traffic enforcement, and that drivers need to use turn signals at an intersection even if there is no stop sign posted. Officer Kavals testified that defendant was stopped for the stop sign violation, as well as failing to use his turn signal at the intersection before turning left onto Race Street.

Defendant's first argument is that the physical evidence in this case should be suppressed because the police lacked probable cause to stop his vehicle. Defendant maintains he did not commit a traffic violation because there was no stop sign that controlled traffic on North Homewood Avenue, thus he was not required to stop at the intersection of North Homewood and Race Street before turning left onto Race Street. Accordingly, defendant contends that the police lacked probable cause to stop his vehicle, and the officer's pursuit, stop, search and seizure of his person were

4

AO 72
(Rev. 8/82)

fruit of the initial unlawful stop and must be suppressed.

To meet its burden to show that the vehicle stop and subsequent search and seizure were reasonable, the government argues that Officer Kavals initially observed defendant violate certain traffic laws, then fled when the officer attempted to make a valid stop of his vehicle. After defendant exited his vehicle, the foot chase ensued, whereupon the officer observed defendant discard a firearm. Once defendant was arrested in relation to possession of a firearm, he was searched incident to that lawful arrest and the search revealed money and crack cocaine. Therefore, the government's position is that the traffic stop was reasonable and proper and the evidence in this case was lawfully seized by the police.

A vehicle stop is subject to the constitutional requirement that it not be "unreasonable" under the circumstances. <u>Whren v. United States</u>, 517 U.S. 806, 810 (1996). The decision to stop a vehicle is reasonable where the police have probable cause to believe that a traffic violation has occurred. <u>Id.</u>; <u>United States v. Moorefield</u>, 111 F.3d 10, 12 (3d Cir. 1997).

In this case, Officer Kavals testified that defendant committed two traffic violations by failing to stop at a stop sign on North Homewood Avenue before turning left onto Race Street and by failing to use his turn signal to indicate that he was turning left. Defendant refuted Officer Kavals' testimony by the

5

testimony of investigator Marc Caudel that there is no stop sign on North Homewood Avenue, and by photographic evidence showing the same. By correspondence to the court dated June 29, 2005, the government conceded that there is no stop sign at the intersection of North Homewood Avenue and Race Street as it would pertain to traffic traveling on North Homewood Avenue.

Nonetheless, "[a] traffic stop based on an officer's incorrect but reasonable assessment of facts does not violate the Fourth Amendment." United States v. Chanthasouxat, 342 F.3d 1271, 1276 (11th Cir. 2003). See also United States v. Cashman, 216 F.3d 582, 587 (7th Cir. 2000) (for purposes of probable cause analysis, the propriety of a traffic stop does not depend on whether the defendant was actually guilty of committing the traffic offense; rather, the pertinent inquiry is whether it was reasonable for the officer to believe that a traffic violation had occurred). Here, Officer Kavals testified that he believed there was a stop sign on North Homewood Avenue and that he was preparing to stop his vehicle as he approached the intersection. The court has carefully considered Officer Kavals' testimony and finds it to be credible with respect to his belief, although mistaken, that there was a stop sign on North Homewood Avenue that required both he and defendant to stop at the intersection. The court finds it significant that Officer Kavals was preparing to stop his own vehicle on North Homewood Avenue. That fact supported his belief

that a stop sign was posted and that defendant committed a traffic violation by failing to stop. Thus, it was reasonable for Officer Kavals to believe that defendant had committed a traffic violation. Pursuant to Chanthasouxat and Cashman, the fact that the officer was mistaken in his belief concerning the existence of a stop sign does not invalidate the traffic stop.

Furthermore, Officer Kavals testified that the traffic stop also was based on defendant's failure to use his turn signal prior to turning left from North Homewood Avenue onto Race Street. Pursuant to 75 Pa.C.S.A. §3334, drivers are required to give an appropriate signal before making a turn. Thus, defendant's failure to use his turn signal, which was unrefuted by defendant at the suppression hearing, provided Officer Kavals with probable cause to stop defendant's vehicle pursuant to Whren. See Carr v City of Erie, 2004 WL 2190955 (3d Cir. Sept. 30, 2004) (holding that failure to use a turn signal provides a lawful basis for making a traffic stop in Pennsylvania). For all of these reasons, the stop of defendant's vehicle was proper.

Having concluded that the vehicle stop was based on probable cause, the next inquiry in regard to defendant's motion to suppress physical evidence is whether the arrest of defendant and subsequent search of his person was lawful. In order for a warrantless arrest to be lawful, it must be based on probable cause. United States v. Watson, 423 U.S. 411, 423-24 (1976). In

Watson, the Supreme Court held that probable cause for a warrantless arrest exists when the officer has reasonable grounds to believe that an offense has been or is being committed. Id. at 417-18. When defendant fled after the traffic stop and Officer Kavals chased him, the officer saw defendant pull a gun from his pants pocket and toss it into a grassy area. Given that fact, the officer had reasonable grounds to believe that an offense had been committed. Thus, there was probable cause to arrest defendant.

After making a lawful arrest, the police may conduct a warrantless search incident to the arrest to secure weapons and to prevent the concealment or destruction of evidence. United States v. Robinson, 414 U.S. 218, 234-35 (1973). "A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." Id. at 235. Here, the search of defendant's person which uncovered crack cocaine and cash was a lawful search incident to his arrest. For all of these reasons, defendant's motion to suppress physical evidence will be denied.

Defendant's second argument is that his statements to ATF Special Agent Manns and Detective Bielevicz should be suppressed because they were made in violation of United States v. Miranda, 384 U.S. 436 (1966). The Supreme Court in Miranda stated that a suspect informed of his right to counsel and right to remain

8

silent may waive those rights if the waiver is "made voluntarily, knowingly and intelligently." Miranda, 384 U.S. at 444. This determination must be made considering the "totality of the circumstances". Oregon v. Bradshaw, 462 U.S. 1039, 1046 (1983). In analyzing the totality of the circumstances, courts must consider the facts of the particular case, including the background, experience and conduct of the defendant. Id. In addition, the government has the burden of proving the waiver by a preponderance of the evidence. Colorado v. Connelly, 479 U.S. 157, 168-69 (1986).

The government met its burden in this case. The testimony by Detective Bielevicz, along with the Waiver Form executed by defendant, indicate that defendant was properly advised of his Miranda rights and that he voluntarily, knowingly and intelligently waived those rights and gave a statement. Furthermore, there was no testimony or evidence at the hearing to indicate that defendant's statements were coerced. Accordingly, defendant's motion to suppress statements will be denied.

An appropriate order will follow.

/s/ Gustave Diamond
Gustave Diamond
United States District Judge

Date: July 18, 2005

9

cc: Almon S. Burke, Jr.
    Assistant U.S. Attorney

    Linda E.J. Cohn
    Assistant Fed.Pub. Defender

AO 72
(Rev. 8/82)